RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0220p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LORILLARD TOBACCO COMPANY,
                    *Plaintiff-Appellant,*

v.                                                    No. 05-1642

AMOURI'S GRAND FOODS, INC.,
                    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-71007—Bernard A. Friedman, Chief District Judge.

Argued: April 19, 2006

Decided and Filed: June 30, 2006

Before: MOORE and GIBBONS, Circuit Judges; SHADUR, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Kathleen A. Lang, DICKINSON WRIGHT, PLLC, Detroit, Michigan, for Appellant. Daniel M. Clark, Detroit, Michigan, for Appellee. **ON BRIEF:** Kathleen A. Lang, Nicole M. Clinton, Joscelyn C. Boucher, DICKINSON WRIGHT, PLLC, Detroit, Michigan, for Appellant. Daniel M. Clark, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

MILTON I. SHADUR, District Judge. Lorillard Tobacco Co. ("Lorillard") brought this action against Amouri's Grand Foods, Inc. ("Grand Foods"), asserting a variety of trademark, unfair competition and consumer protection violations under federal law and Michigan state law. Lorillard accompanied its Complaint with a motion for preliminary injunction, which the district court denied. Lorillard now appeals that denial. We **REVERSE** the denial and **REMAND** this case to the district court for the reasons and on the terms stated in this opinion.

_____

[*]The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

**Background**

Lorillard manufactures and sells cigarettes under a variety of brand names (J.A. 55).[1] One of its most popular brands is "Newport," which Lorillard has sold since 1956 (*id.*). Lorillard and its affiliated entities have registered a number of marks related to the brand, including NEWPORT, NEWPORT (stylized), LORILLARD, Spinnaker Design and NEWPORT and Design, and they have committed considerable resources to promoting and marketing the brand (*id.*). Grand Foods is a retail convenience store that sells (among other items) Lorillard cigarettes, including Newports.

On or about March 8, 2005,[2] while conducting a review of the freshness of Grand Foods' stock of Lorillard cigarettes, Lorillard sales representative Everett Williams ("Williams") discovered four packs of Newport cigarettes that, based on his experience with the indicia of authentic Newport packaging, he suspected were counterfeit (J.A. 49). Williams accordingly forwarded those packages to Lorillard Manager of Sales Planning Edward O'Brien ("O'Brien") (*id.*), who has "specialized knowledge" and experience in recognizing counterfeit Lorillard products (*id.* 50). Upon inspection O'Brien determined that the packages were in fact counterfeit (*id.* 51), noting three differences between the counterfeit and genuine packages of Newport: the foil on the top of the counterfeit packages was silver rather than gold, the "cellophane tear tape tab" on the counterfeit packages protruded from the right front edge of the pack rather than the left, and the printing on the packages, especially the words "Lorillard" and "Greensboro," was clearer on the bogus version than on the real thing (*id.*).

After confirming that the packages were counterfeit, Lorillard filed its Complaint (J.A. 5-17), simultaneously moving for an ex parte seizure order under 15 U.S.C. §1116(a) and (d)[3] and for a temporary restraining order ("TRO") and preliminary injunction under Fed. R. Civ. P. 65 (*id.* 19-21). Both the seizure order and the TRO were granted, and on March 23 United States Marshals, accompanied by Lorillard representatives, conducted a seizure at Grand Foods during which four additional Newport packages thought to be counterfeit were seized (*id.* 100).[4]

Two weeks later, on April 5, the district court held a hearing as to the remaining portion of Lorillard's motion, its request for a preliminary injunction (J.A. 145-69). While Lorillard had submitted both evidence and a supporting brief that argued it had satisfied all four factors required for preliminary injunctive relief (*id.* 22-65), Grand Foods submitted neither. During the hearing Grand Foods offered to agree not to sell counterfeit Newport packages knowingly (*id.* 161-63), but Lorillard refused that offer.[5] After hearing from both parties' counsel, the district judge said "the equities...tend to be...in favor of [Grand Foods]" (*id.* 163) and "I don't think" that "equity dictates issuing a preliminary injunction" (*id.* 167).

On April 7 the district court entered an order denying an injunction "[f]or the reasons stated on the record" during the April 5 hearing (*id.* 66). At no point during the hearing, however, had the district court clearly indicated which "equities" it was "weighing" in coming to its conclusion, nor

---

[1]We cite the Joint Appendix as "J.A.--."

[2]Because all remaining background events also occurred in 2005, further year references will be omitted.

[3]All further statutory references will take the form "Section--," omitting the prefatory "15 U.S.C."

[4]Lorillard later determined that one of the seized packages was authentic and returned it to Grand Foods (J.A. 133).

[5]Although the portions of the hearing transcript cited by the parties do not make such an offer clear, both parties' briefs indicate that they understood that such an offer was made and Lorillard rejected it.

had it discussed the four preliminary injunction factors Lorillard had addressed in its brief (J.A. 145-69).  Lorillard now appeals the denial of its motion for preliminary injunction.

### Standard of Review and Governing Principles

We review a district court's decision to grant or deny a preliminary injunction for abuse of discretion (*United States v. Any & All Radio Station Transmission Equip.*, 204 F.3d 658, 665 (6th Cir. 2000)).  Such an abuse exists when the district court "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard" (*Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)).  In addressing a motion for preliminary injunction the district court should consider (1) the likelihood that the movant will succeed on the merits, (2) whether the movant will suffer irreparable harm without the injunction, (3) the probability that granting the injunction will cause substantial harm to others and (4) whether the public interest will be advanced by issuing the injunction (*Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997)).  In making its determination the "district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue" (*id.*).

### Preliminary Injunctive Relief Vel Non

Lorillard first contends that in denying the injunction the district court failed to apply the appropriate four-factor test.  Lorillard further urges that it has adequately demonstrated that each of the factors supports preliminary injunctive relief, so that we should direct the district court to grant the requested injunction.  We agree on both counts.

As already indicated, the record makes it abundantly clear that the district court did not look to the prescribed factors in reaching its decision.  Neither the court's oral statement during the April 5 hearing nor its April 7 written order makes any findings, specific or otherwise, as to the likelihood of Lorillard's success on the merits, the risk of Lorillard suffering irreparable harm if the injunction were not issued, the particular harms to others that an injunction would cause or the impact of an injunction on the public interest.  Instead the announced predicate for the district court's ruling was a generalized statement as to the "equities" of the case and as to which party they "tend[ed]" to favor.  We find those omissions to be an abuse of discretion.

Normally when we encounter such a situation, we simply vacate or reverse the improper denial of a preliminary injunction and remand for further consideration under the proper standards (*Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003)).  But on the less frequent occasion when (as here) the record unequivocally calls for an injunction, an appellate court may simply instruct the district court to grant the requested relief (*Patton v. Dole*, 806 F.2d 24, 31 (2d Cir. 1986)).  Here the ensuing discussion shows that Lorillard has unquestionably satisfied each of the requisite criteria.

### Likelihood of Success on the Merits

At trial Lorillard will have to establish several elements to prevail on its claims (*see, e.g.*, *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991)), but at this preliminary stage Grand Foods challenges only one:  Lorillard's ability to demonstrate a "likelihood of confusion" among consumers due to Grand Foods' use of the Newport mark.[6]  To that

---

[6] Although the text of Lorillard's brief and the cases it cites do not specify whether it is basing its injunction request on Section 1125(a) or Section 1114 or perhaps both, that ambiguity is immaterial, for our analysis of the crucial element here--the likelihood of confusion--is the same under either provision (*Autozone, Inc. v. Tandy Corp.*, 373 F.3d 786, 791-92 (6th Cir. 2004)).

end we have in the past identified eight such elements, not all of which may be relevant in every case: (1) strength of the mark, (2) relatedness of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of purchaser care and sophistication, (7) defendant's intent in selecting its mark and (8) likelihood of expansion of the product lines using the marks (*id.* at 1106; *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)). As Lorillard's cogent analysis of those factors demonstrates persuasively (and as might be expected in any counterfeiting case--especially where the counterfeiting is skillful), here there is a certainty of "confusion among consumers regarding the origin" of the cigarette packages offered for sale by Grand Foods (*id.*).

We are not at all persuaded by Grand Foods' arguments in rebuttal. Rather than replying to Lorillard factor by factor, Grand Foods instead contends that the fact that it did not intend to sell counterfeit items and that it did not create, manufacture or package such items precludes Lorillard from succeeding on its claim. But we have repeatedly held that a showing of intent is not required to demonstrate the likelihood of confusion (*see, e.g.*, *Autozone, Inc. v. Tandy Corp.*, 373 F.3d 786, 799 (6th Cir. 2004)). While a "defendant's intent" is one of the eight factors noted above, it is considered only in the sense that its existence can "strengthen[ ] the likelihood of confusion" (*Champions Golf Club, Inc. v. Champions Golf Club, Inc.*, 78 F.3d 1111, 1121 (6th Cir. 1996)). Its absence, on the other hand, does not preclude such likelihood (*id.*). After all, if "potential purchasers are confused, no amount of good faith can make them less so" (*Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 596 (5th Cir. 1985)).[7] Nor, given the clear rejection of an intent requirement in this context, do we see any justification for importing an intent requirement from other provisions of the civil and criminal trademark codes, as Grand Foods invites us to do.

We also find, and Grand Foods offers, no reason to restrict liability to those who actually create, manufacture or package the infringing items. Contrary to Grand Foods' position, while a showing of "likelihood of confusion" does require that consumers mistakenly believe that the infringing goods were "sponsored or otherwise approved" by the plaintiff (*Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 599 (6th Cir. 1991)), there is no further requirement that those goods must have been produced by the defendant. Indeed, all the statutes demand is that the defendant have "used" the goods "in commerce" (Sections 1114(1)(a) and 1125(a)), and we can think of no clearer "use" of goods "in commerce" than offering them for sale (*see El Greco Leather Prods. Co. v. Show World, Inc.*, 806 F.2d 392, 396 (2d Cir. 1986) and Section 1127). In sum, as the Seventh Circuit has put it concisely, "[s]ellers bear strict liability for violations of the Lanham Act" (*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1152 n.6 (7th Cir. 1992)), and we too decline to excuse Grand Foods from liability due either to its ignorance or to its role as a retailer rather than producer of the counterfeit goods (*see El Greco*, 806 F.2d at 396).

## Irreparable Harm

As to irreparable harm, our Circuit requires no particular finding of its likelihood to support injunctive relief in cases of this type, for "irreparable injury 'ordinarily follows when a likelihood of confusion or possible risk to reputation appears' from infringement or unfair competition" (*Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999), quoting *Wynn Oil*, 943 F.2d at 608). Grand Foods' attempts to escape that conclusion are unconvincing. Essentially it contends that Lorillard has not shown irreparable harm because it has not shown either (1) that the

---

[7]Of course the "intent" inquiry in this case is different from that in the typical trademark case, where the question is whether the defendant's use of plaintiff's mark was intended to infringe the mark. Grand Foods instead argues that its claimed innocence as to infringement should make a difference. But that obviously cannot be the case in a counterfeiting situation where injunctive relief is at issue: Whether or not the defendant has authored the counterfeit is irrelevant to the question of *customer* confusion.

cigarettes in the counterfeit packaging are not genuine or are of low quality or (2) that anyone has complained about their quality. In these cases, though, the harm stems not from the actual quality of the goods (which is legally irrelevant) but rather from Lorillard's loss of control over the quality of goods that bear its marks (*El Greco*, 806 F.2d at 395).

In light of Lorillard's submission of sworn declarations that the packages were counterfeit and Grand Foods' failure to offer any evidence to the contrary,[8] there is no doubt on that score: Goods are being offered for sale that purport, via their use of Lorillard's marks, to have been produced by Lorillard, but that were not. Hence we see no reason why the conclusion as to irreparable harm should not operate in this case, and we therefore find Lorillard to have established the second element of its request for a preliminary injunction.

**Harm to Others**

Our next factor to consider in assessing whether an injunction should be granted is whether it will cause harm to others--in this instance to Grand Foods, for the "others" in more generic terms, the consuming public, are dealt with in the next section of this opinion. As Lorillard observes, the only "harm" that the contemplated injunction would visit upon Grand Foods is hardly a legally cognizable one: It would be prohibited from selling counterfeit products, an illegal act to begin with. Grand Foods understandably does not argue otherwise. Instead its challenge focuses not on the harm it would suffer by *complying* with such an injunction, but rather on the harm it would suffer if it were to *violate* the injunction.

Harm stemming from a violation of an injunction is generally not the kind of "harm to others" that this third factor contemplates. After all, every injunction carries with it the prospect that a violating party can be penalized for contempt of court. One obvious answer is that such a prospect is a necessary consequence of the structure that Congress and the caselaw have created, given the combination of a close resemblance between counterfeit and authentic packages and the absence of any need to show an intent to infringe. In allocation-of-risk terms, the law favors the innocent producer of legitimate goods over a party that may be an innocent marketer of counterfeit goods.[9] If courts were to accept the Grand Foods proposal that it be enjoined only from not "knowingly to sell counterfeit cigarettes," that half-way measure would provide Lorillard with less protection (and Grand Foods with more leeway) than Congress' statutory scheme dictates.

We appreciate, of course, that the law can create real-world difficulties for an infringer in Grand Foods' position, for the more expert and sophisticated a counterfeiting operation may be, the more difficult it becomes to avoid infringement. But there is more than one answer to that concern. For one thing, the entry of an injunction properly places the burden of due care on the right shoulders: Retailers can police their purchases of goods, whether by watching for differences that mark the counterfeit goods (in this case the known differences in foil color, alignment of the cellophane tear tab and clarity of printing) or by switching to new wholesalers or by pressuring its present wholesalers to check their own sources more rigorously or by regarding any material cost savings with suspicion as possible indicia of a counterfeit knockoff. And for another, even though a lack of wilfulness does not insulate against a finding of violation of an injunction, "the

---

[8] Despite the lack of evidentiary support on its part, Grand Foods also argues that Lorillard has not been harmed because "there is no allegation by Lorillard that the markings on the allegedly counterfeit packaging misrepresent Lorillard's marks." That is frankly absurd when the packages are viewed side by side.

[9] We express no view regarding Grand Foods' innocence or lack of innocence, a subject that has not been resolved by the district court in the record before us. It remains for resolution by that court as part of the ultimate decisions on the merits of the litigation and on what remedies may be appropriate.

contemnor's state of mind, such as his good faith..., is relevant to mitigation of any penalty" that might be imposed (*Rogers v. Webster*, 776 F.2d 607, 612 (6th Cir. 1985)).

**Public Interest**

As for the final preliminary injunction factor, the effect on the public interest, it too points strongly in favor of granting injunctive relief. Such an injunction against the sale of counterfeit cigarette packages would advance two fundamental purposes of trademark law: preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark (*Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 964 (6th Cir. 1987)). In that respect Grand Foods merely renews its contentions as to the compliance difficulties it may have with such an injunction and as to the elimination of such difficulties if we were to accept its alternative promise not to sell counterfeit cigarettes knowingly. But here such arguments speak not to the public's interest but to that of Grand Foods, which we have already dealt with and rejected.

## Conclusion

We therefore **REVERSE** the district court's denial of Lorillard's motion for preliminary injunction and **REMAND** the case to the district court with the direction to enter a preliminary injunction consistent with this opinion.