**NOT RECOMMENDED FOR PUBLICATION**

File Name: 07a0554n.06

Filed: August 8, 2007

**No. 06-2308**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| IGNITION ATHLETIC PERFORMANCE GROUP, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| HANTZ SOCCER U.S.A., LLC, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SILER and COOK, Circuit Judges; REEVES, District Judge.[*]

**Per Curiam**. Ignition Athletic Performance Group ("Ignition") appeals the district court's

denial of a preliminary injunction against Hantz Soccer U.S.A. ("Hantz"). Ignition claims that the

district court abused its discretion in denying a preliminary injunction against Hantz because of an

alleged trademark violation. Because Ignition's argument lacks merit, we **AFFIRM**.

**I. BACKGROUND**

Ignition is a Cincinnati based sports training organization formed in May 2004. The

company works with participants of all ages and abilities in a variety of sports. Its primary

customers are high-school athletes, and its most popular sport is soccer. It hosts soccer camps in

Ohio and advertises at athletic events. Most of Ignition's customers come from the Cincinnati area

---

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

and most of its advertising is done there. However, it has some exposure and customers from the rest of Ohio and other states. Ignition uses logos bearing its name and a flame to represent the company. It also sponsors a professional soccer team in Cincinnati, the Cincinnati Kings, that has the Ignition logo on the front of its jerseys.

In April 2006, the Major Indoor Soccer League ("MISL") announced the name of a new expansion team in Detroit, the "Detroit Ignition" ("Detroit Ingition"). The team is owned and operated by Hantz. The logo of the Detroit Ignition consists of an ignition spark plug, a soccer ball, and the term "Detroit Ignition." The team advertises in the metro-Detroit area, but it has exposure in the cities in which it competes. Hantz intends to operate a soccer camp for youths in the metro-Detroit area, taught by the professional team's players and coaches. The Detroit Ignition has a partnership with High Velocity Sports ("HVS"), an athletic facility in Canton, MI.

In August 2008, Ignition brought a suit against Hantz for trademark/service mark infringement under 15 U.S.C. § 1114, for false designation of origin under 15 U.S.C. § 1125(a), and seeking a declaratory judgement that any promotion or sales involving the Detroit Ignition would infringe on the Ignition mark and logo. Ignition also moved for entry of a temporary restraining order and a preliminary injunction. The district court denied the request for the temporary restraining order in August 2006 and the request for the preliminary injunction in September 2006.

## II. ANALYSIS

The standard for reviewing a district court's denial of a motion for preliminary injunction is abuse of discretion. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 379 (6th Cir. 2006). In considering whether to grant a preliminary injunction, the district court must take into

account "(1) the likelihood that the movant will succeed on the merits, (2) whether the movant will suffer irreparable harm without the injunction, (3) the probability that granting the injunction will cause substantial harm to others and (4) whether the public interest will be advanced by issuing the injunction." *Id.* at 380.

## A. Likelihood that the Movant Will Succeed on the Merits

The test for whether there is liability for trademark infringement is if "the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). Eight factors must be examined to determine whether the defendant's mark will likely lead to confusion: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the mark; (4) evidence of actual confusion; (5) marketing channel used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.*

### 1. Strength of the Senior Mark

In assessing the strength of a mark, the trademark is placed into one of four categories, from weakest to strongest: generic, descriptive, suggestive, and fanciful or arbitrary. *Id.* The district court correctly said that the Ignition logo is arbitrary, the strongest category of protection, because the term "Ignition" has nothing to do with athletic performance. *See Id.*

However, once the category is determined, we must analyze the mark's "distinctiveness and degree of recognition in the marketplace." *Homeowner's Group Inc. v. Home Mktg. Specialists, Inc.,*

931 F.2d 1100, 1107 (6th Cir. 1991). Though Ignition has some exposure outside of Cincinnati, it is limited, and it did not establish any considerable strength in the Detroit market.

### 2. Relatedness of the Goods or Services

Ignition claims that its goods and services are highly related to Hantz in three areas: professional soccer teams, training facilities, and soccer camps. Though the Detroit Ignition and the Cincinnati Kings both have the term "Ignition" on their jerseys, the teams are not substantially related because they play in different leagues in different cities, and one plays outdoor soccer and the other indoor. Confusion between HVS and Ignition is not likely, even though they are both athletic facilities. The services at HVS are substantially different than those at Ignition, and HVS is only associated with the Detroit Ignition, whereas the Ignition facility carries the name Ignition. Furthermore, the facilities are over 200 miles apart, so they are not likely to attract the same clientele. Finally, the respective soccer camps that Ignition and Detroit Ignition run are hundreds of miles apart and are largely limited to their respective regions.

### 3. Similarity of the Marks

The district court correctly concluded that the marks of Ignition and Detroit Ignition are similar, as they are identically pronounced and prominently feature the term "Ignition." This factor is in favor of Ignition. *See Daddy's Junky Music*, 109 F.3d at 283.

### 4. Evidence of Actual Confusion

Though there has not been any actual confusion between the two entities, "the absence of actual evidence is inconsequential," *PACAAR Inc. v. Telescan Techs., L.L.C.*, 319 F.3d 243, 252, so this factor is not in favor of either party.

### 5. Marketing Channels Used

The two companies market to similar audiences, athletic youths, and they use similar advertising mediums, such as newspaper ads, websites, promotions, deals with local sports organizations, and to a lesser extent, television and radio advertisements. However, they advertise in different regions. The fact that the two companies are targeting similar audiences with similar mediums in different cities is not enough to show that the marketing channels are not the same. *See Daddy's Junky Music*, 109 F.3d at 285.

### 6. Likely Degree of Purchaser Care

The parties concede that this is not a significant factor.

### 7. Intent of the Defendant in Selecting the Mark

The parties concede that this is not a significant factor.

### 8. Likelihood of Expansion of the Product Line

"A strong possibility that either party will expand his business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." *Id.* at 287. Though Ignition claims it has possible plans to expand and franchise, it does not have any definite plans. Therefore, this factor is not in favor of either party. *See Id.*

## B. Irreparable Harm to the Movant

Irreparable harm normally follows when there is a likelihood of confusion or risk to reputation. *Lorillard*, 453 F.3d at 381-82. However, there is no risk of confusion between Ignition and Detroit Ignition for the reasons stated above. Though Ignition succeeded on some of the above factors, such as similarity of the marks, the rest of the factors overwhelmingly support the Detroit

Ignition. Therefore Ignition does not succeed on the merits and irreparable harm does not necessarily follow.

## C.  Substantial Harm to Others

The district court was correct to conclude that there would be harm to the Detroit Ignition if it was forced to change the name of the team because at the time of the decision the Detroit Ignition had been developing its brand and advertising in anticipation of its inaugural season. The district court was also correct to conclude that this factor weighs against the issuance of an injunction. *See id.* at 380.

## D.  Public Interest

There is a public interest in "preventing confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Id.* at 383. However, because Ignition and Detroit Ignition are in different cities and their goods are substantially different, there is no likelihood of confusion between Ignition and Detroit Ignition.

**AFFIRMED.**