NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Case No. 17-6221

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

PGP, LLC,                                          )
                                                   )
     Plaintiff-Appellant,                          )
                                                   )
                                                   )  ON APPEAL FROM THE UNITED
v.                                                 )  STATES DISTRICT COURT FOR
                                                   )  THE MIDDLE DISTRICT OF
TPII, LLC; BRYAN KEITH BURNS; HEIDI                )  TENNESSEE
NEWFIELD,                                          )
                                                   )
     Defendants-Appellees.                         )
                                                   )

BEFORE: DAUGHTREY, STRANCH, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. In the early 2000s, country music trio Bryan Keith Burns, Heidi Newfield, and Ira Dean began performing as "Trick Pony." Once the band gained a following, they decided to bring on a manager to handle their business affairs so the trio could focus on creative output. They hired Herbert Graham. Graham's work included helping the band register a trademark and a service mark for use of the "Trick Pony" name.

The band quickly rose to stardom. Its debut album sold more than 500,000 copies, achieving recognition as a Gold record. The band soon won an American Music Award for

"Favorite New Country Artist."[1]  But despite this early success, the band broke up a few years later.

After the band broke up, the Trick Pony marks came up for renewal.  Neither Graham nor any of the band's attorneys contacted the band about renewing the marks.  Unaware that they needed to renew their registrations, the band failed to do so.  And when nobody renewed the registrations, the Patent and Trademark Office cancelled them.  Unbeknownst to the former band, Graham applied for registration of the marks soon after.  Supposedly, he intended to form a new band to perform under the Trick Pony name.  As luck would have it, however, Burns, Newfield, and Dean decided to reunite just as Graham was in the process of securing new registrations for the marks.

The trio asked Graham to resume management of the band, and he agreed.  According to the band, Graham informed them that they no longer owned the rights to the Trick Pony marks, but he assured them that he had (or would acquire) ownership of them.  Newfield expressed surprise that no one had warned them that the registrations were about to expire, but Graham promised that he would "do right" by the band.  Shortly thereafter, the Patent and Trademark Office approved his applications and registered the Trick Pony marks in Graham's name.

What happened next is subject to some debate.  According to Graham, he formed an exclusive licensing agreement with the band members for their use of the Trick Pony name.  The band members do not recall signing any such agreement—and claim that if they did, it was invalid.  The next year, the band purportedly renewed the licensing agreement.  But in 2016, the band refused to sign a new licensing agreement and informed Graham that they no longer needed his services.  Nevertheless, the band continued touring as Trick Pony.  So Graham sent them a cease-

---

[1]  Tom Roland, *McGraw, Hill Add AMAs to Trophy Case*, CMT News (Jan. 10, 2002), http://www.cmt.com/news/1451723/mcgraw-hill-add-amas-to-trophy-case.

and-desist letter threatening legal action. He then promptly assigned his rights in the marks to a newly formed limited liability company, PGP (of which he was the sole shareholder), and PGP filed suit against the band for trademark infringement.

PGP ultimately seeks a permanent injunction and damages. But because PGP does not want the band to perform under the Trick Pony name during the course of this litigation, it also asked the district court for a preliminary injunction to prevent the band from doing so. The district court denied that motion, and PGP filed this interlocutory appeal. *See* 28 U.S.C. § 1292(a)(1).

## I.

This court reviews the district court's denial of a preliminary injunction under the "highly deferential" abuse-of-discretion standard. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540–41 (6th Cir. 2007) (quoting *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). We will reverse only if the district court misapplied the law or clearly erred in its finding of facts. *Id.* at 541. Whether the movant is likely to succeed on the merits is a question of law that we review *de novo*. *Id.* And as always, we can affirm the district court on any grounds supported by the record. *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 349 n.3 (6th Cir. 1998).

When considering a motion for a preliminary injunction, courts must balance four factors: (1) whether the movant has a "strong likelihood" of success on the merits, (2) whether the movant will suffer irreparable injury absent an injunction, (3) whether the injunction would cause substantial harm to others, and (4) whether the injunction would serve the public interest. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005) (quoting *PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir. 2003)). In the trademark context, the first factor is often decisive. If the movant is likely to succeed on an infringement claim, irreparable injury is

ordinarily presumed, and the public interest will usually favor injunctive relief. *Wynn Oil Co. v. Am. Way Serv. Corp*., 943 F.2d 595, 608 (6th Cir. 1991); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 532–33 (6th Cir. 2004).

II.

To show that it is likely to succeed on the merits of its infringement claim, PGP must establish that (1) it owns the Trick Pony marks, (2) the band used the marks in commerce, and (3) the band's use was likely to cause confusion. *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009); *see* 15 U.S.C. § 1114(1)(a). The second element is not at issue here since the band concedes that it used the marks in commerce. So we need only decide whether PGP is likely to succeed on the other two.

We begin with ownership. If PGP does not have an enforceable ownership interest in the Trick Pony marks, its infringement claim cannot succeed. *See Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir. 2011). PGP argues that this factor poses no obstacle because it has federal registrations for the marks. Federal registration is indeed "prima facie evidence of the registrant's ownership" of a mark. *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001). But federal registration is not dispositive in a case like this, where others "have previously used the mark in commerce" and may retain common-law ownership.[2] *Id.*; *see also E. F. Prichard Co. v. Consumers Brewing Co*., 136 F.2d 512, 518 (6th Cir. 1943). No one disputes that the band used the Trick Pony marks prior to Graham's registering them. The question remains, however, whether the band lost its common-law ownership interest when it broke up. And that question hinges on whether the trio "abandoned" the marks after

---

[2] Prior use is an affirmative defense to an infringement claim. *See* 15 U.S.C. § 1115(b)(6).

disbanding. *See* 15 U.S.C. §§ 1057(c), 1115(b)(6); *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 847–48 (6th Cir. 2013).

A mark is considered "abandoned" when its owner stops using it and does not intend to use it in the future. *See* 15 U.S.C. § 1127; *Yellowbook*, 708 F.3d at 848. The evidence suggests that neither criterion is met here. After the band split up, its members continued to market themselves as former members of Trick Pony and earned royalties on Trick Pony recordings and merchandise. *See Marshak v. Treadwell*, 240 F.3d 184, 199 (3d Cir. 2001) (Alito, J.) (finding no abandonment in part because band continuously received royalty payments). And in at least one instance, the band performed a benefit concert under the Trick Pony name. So the band has a reasonable argument that it continued using the marks and thus retains a competing common-law ownership interest in them.

PGP offers two arguments in response to the band's non-abandonment defense. First, PGP contends that, under the "trademark merger" doctrine, any common-law trademark rights the band might have had were extinguished when the band entered license agreements with PGP. But PGP points to no binding precedent applying the trademark-merger doctrine. Moreover, the band claims that the license agreements were invalid, which, if true, would mean that the doctrine is inapplicable here. So while it is *possible* that PGP will ultimately prevail on this theory before the district court, PGP has not demonstrated that it is *probable* that it will succeed on the merits. *See Mason Cty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 n.4 (6th Cir. 1977) (clarifying that "plaintiffs must demonstrate a strong or substantial likelihood or probability of success on the merits" in order to obtain a preliminary injunction). And at the preliminary-injunction stage, PGP must demonstrate a "strong likelihood" of success in establishing an enforceable ownership interest in the marks. *Tumblebus*, 399 F.3d at 760. PGP has not done so.

Second, PGP argues that the district court implicitly found that it owned the marks and that this is a factual finding entitled to clear-error review. But ownership of a trademark is a *mixed* question of law and fact, so only the factual side of the ownership equation receives clear-error review. *See Allard Enters., Inc. v. Advanced Programming Res., Inc*., 146 F.3d 350, 355 (6th Cir. 1998). The ultimate determination of whether those facts add up to ownership is legal and reviewed *de novo*. *See id*. PGP points to the district court's comment in its likelihood-of-confusion analysis that the band "kn[ew] that [PGP] owned the Trick Pony Trademarks" and reasons that this comment amounts to a factual finding that PGP owned the marks. R. 43, Pg. ID 1263. Earlier in the order, however, the district court defined "Trick Pony Trademarks" as "Registration No. 4,522,403 (the '2014 Trademark')" and "Registration No. 4,615,059 (the '2014 Service Mark')." *Id*., Pg. ID 1258 n.1. The district court's "ownership" remark thus seems to be referring to the fact that PGP holds the federal *registrations* for the Trick Pony marks—rather than implying that it owned them outright. Moreover, the district court never expressly analyzed any of the facts pertaining to ownership or the band's affirmative defenses to PGP's ownership claim. So there are no factual findings to defer to, other than that the band knew PGP held federal registrations of the marks. Because that fact is not dispositive of the ownership question, we are not compelled to conclude that PGP actually had an enforceable ownership interest against the band.

Since PGP failed to establish that it has an ownership interest in the marks that is enforceable against the band, it cannot show that it is likely to succeed on the merits of its trademark-infringement claim. As such, we need not address whether PGP can demonstrate a likelihood of confusion.

III.

Two of the three remaining factors also cut against granting PGP a preliminary injunction. First, because PGP has failed to show a likelihood of success on the merits, irreparable injury is not presumed. *See Wynn Oil*, 943 F.2d at 608. And as the district court noted, PGP's claimed injuries are not irreparable since they could likely be compensated through monetary damages. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578–79 (6th Cir. 2002) (no irreparable harm where party could recover monetary damages if successful on the merits). Moreover, although some trademark cases have found irreparable harm when the claimant risks losing control over the quality of goods that bear the claimant's marks, *see Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006), that danger is not present here. The band now performing as Trick Pony is composed of two of the three members that recorded Trick Pony's hit record back in 2001. And no other musical group has ever sought to perform under the Trick Pony name. PGP has not pointed to any reason why the court should expect the band's quality to suddenly decline while this litigation is pending. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."). The district court thus did not clearly err in determining that PGP had not shown irreparable injury.

Second, PGP has not demonstrated that the public interest favors a preliminary injunction. All of PGP's public-interest arguments hang on the virtues of its merits arguments. And, again, PGP has not shown a probability of success on the merits. Furthermore, the district court aptly noted that PGP's primary goal in the litigation was to convince the band to renegotiate a licensing agreement—and it is not in the public interest to grant an injunction so one party has a bargaining chip in future negotiations. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 396–97 (2006)

(Kennedy, J., concurring) (remarking that in certain circumstances where "the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest"). The district court thus did not err in concluding that this factor weighed in favor of the band.

The final preliminary-injunction factor—substantial harm to others—is not contested here. The district court found that a preliminary injunction would not cause any harm to others, and neither side challenges that finding. Nevertheless, three of the factors weigh against granting a preliminary injunction. So we find no abuse of discretion in the district court's balancing, nor in its decision to deny the injunction.

IV.

For these reasons, we **AFFIRM** the district court.