**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

EARTHGRAINS BAKING
COMPANIES INC.,

Plaintiff–Appellee,

v.

SYCAMORE FAMILY BAKERY, INC.;
LELAND SYCAMORE,

Defendants–Appellants.

No. 12-4146
(D.C. No. 2:09-CV-00523-DAK)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **HOLLOWAY**,[**] and **GORSUCH**, Circuit Judges.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The late Honorable William J. Holloway, Jr., United States Senior Circuit Judge, participated as a panel member when this case was heard, but passed away before final disposition. "The practice of this court permits the remaining two panel judges if in agreement to act as a quorum in resolving the appeal." United States v. Wiles, 106 F.3d 1516, 1516 n.* (10th Cir. 1997); see also 28 U.S.C. § 46(d) (noting circuit court may adopt procedure permitting disposition of an appeal where remaining quorum of panel agrees on the disposition). The remaining panel members have acted as a quorum with respect to this Order and Judgment.

Leland Sycamore appeals following a partial grant of summary judgment and a jury verdict in favor of EarthGrains Baking Companies, Inc. ("EarthGrains"). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.

**I**

**A**

Sycamore developed a commercially successful line of "homemade bread" at a bakery in Orem, Utah. The product eventually became known as "Grandma Sycamore's Home Maid Bread." In 1998, as part of an asset purchase agreement, Sycamore and his bakery sold to Metz Baking Company ("Metz") "[a]ll registered, unregistered and common law trademarks, service marks, logos, trade names, trade dress and other trademark rights, including without limitation all Grandma Sycamore's trademarks (the 'Sycamore Trademarks')."

Concurrent with the asset purchase agreement, Metz and Sycamore executed a Trademark License Agreement ("TLA"), which granted Sycamore a "perpetual, royalty free, exclusive license" to use the Sycamore Trademarks in the "Licensed Territory," consisting of Arizona, Nevada, and Southern California with the exception of several specified cities.[1] Sycamore was not permitted to "assign, license, sublicense, or otherwise convey" his rights pursuant to the TLA except "to a permitted assign" (defined to include "Sycamore's Family" and entities in which at least a seventy-five percent

___

[1] At issue are two trademarks associated with Grandma Sycamore's Home Maid Bread. One of those trademarks was pending at the time the TLA was executed.

ownership interest is held by "Sycamore or a member of the Sycamore Family") without Metz's written permission. The TLA also provided for a "Nonuse Forfeiture":

> In the event that, as of January 1, 2010, Sycamore and/or his permitted assigns have not commenced and do not regularly distribute products under the Sycamore Trademarks within any State within the Licensed Territory, then the License granted by Metz for any State within the Licensed Territory in which such products are not then distributed by Sycamore and/or his permitted assigns shall be terminated (the "Forfeited Territory") and all rights therein for such State shall revert back to Metz.

Sara Lee Corporation subsequently acquired Metz's assets, including its rights under the asset purchase agreement. EarthGrains acquired Sara Lee's interest in the Sycamore Trademarks and its rights under the contracts at issue, and replaced Sara Lee as the plaintiff after this litigation commenced.

Without obtaining the permission required by the TLA, Sycamore entered into an agreement in 2005 with Holsum Bakery, Inc., purporting to sublicense his right to use the Sycamore Trademarks in the Licensed Territory. Sycamore terminated that sublicense in 2009. In 2008, Sycamore formed a corporation to acquire a bakery in Utah, which he renamed the Sycamore Family Bakery ("SFB"). SFB began producing bread which it marketed as "The Original Granny Bread." Sara Lee sent cease-and-desist letters to Sycamore beginning in December 2008. The first "request[ed] that [Sycamore] confirm that [he] will refrain from using Sycamore or any trademark containing the component Sycamore in connection with bread or bakery products except as expressly permitted by license from Sara Lee." Sycamore never responded to the letters.

**B**

Sara Lee brought suit against Sycamore and SFB in June 2009. The operative complaint alleged trademark infringement, unfair competition, cybersquatting, and breach of contract. The district court preliminarily enjoined the defendants from "[u]sing . . . SYCAMORE FAMILY BAKERY or any other designation, trademark, service mark, or trade dress containing the component SYCAMORE" in packaging, written materials viewed by customers, or even "in any other written or verbal manner that serves to identify the source of Defendants' products." Following discovery, both parties moved for summary adjudication of specific issues and for partial summary judgment. The district court granted summary judgment to Sara Lee on its breach of contract, Lanham Act, and common law trademark infringement and unfair competition claims. It also concluded that Sycamore forfeited his license in Arizona, Nevada, and Sothern California by failing to distribute products in those territories.

A limited jury trial followed. The jury was tasked with (1) deciding whether defendants' unlawful conduct was intentional and (2) determining and allocating damages. Although Sycamore filed objections to certain proposed jury instructions, both parties stipulated to instructions stating that if the jury found the trademark infringement was intentional, "EarthGrains is entitled to any profits earned by the defendants or Holsum Bakery that are attributable to the infringement" or "unfair competition."

Both Sycamore and SFB, the jury concluded, "intentionally infringed the Grandma Sycamore trademarks, knowing it was infringement." It awarded $206,000 against Sycamore for trademark infringement, $0 against SFB for trademark infringement,

$2,118,429 against Sycamore for unfair competition, and $8,700 against SFB for unfair competition. Following the verdict, EarthGrains moved for treble damages. See 15 U.S.C. § 1117(a) ("In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."). The district court doubled the damage awards against Sycamore and tripled the award against SFB. Sycamore appeals, but SFB does not.

## II

Sycamore raises three issues in his opening brief on appeal. First, he argues that the district court misinterpreted the nonuse forfeiture provision of the TLA when it deemed his license in Arizona and Nevada forfeited. Second, he argues that EarthGrains was allowed to recover damages beyond those allowed by law. Third, he claims that the district court abused its discretion by doubling the verdict against him.

## A

We review the district court's interpretation of a contract de novo under applicable law. Level 3 Commc'ns, LLC v. Liebert Corp., 535 F.3d 1146, 1154 (10th Cir. 2008). The TLA provides, and the parties do not dispute, that Arizona law governs its interpretation. Arizona law disfavors contract interpretations that result in forfeiture. Schaeffer v. Chapman, 861 P.2d 611, 614 (Ariz. 1993) (en banc) ("We repeatedly have held that contracts will be strictly construed to avoid forfeitures."); Harford v. Nat'l Life & Cas. Ins. Co., 299 P.2d 635, 637 (Ariz. 1956) ("[F]orfeitures are not favored by law,

and if an agreement providing for forfeiture is capable of two constructions, that against forfeiture should be followed.").

The relevant language in the TLA is hardly a model of clarity:

> In the event that, as of January 1, 2010, Sycamore and/or his permitted assigns have not commenced and do not regularly distribute products under the Sycamore Trademarks within any State within the Licensed Territory, then the License granted by Metz for any State within the Licensed Territory in which such products are not then distributed by Sycamore and/or his permitted assigns shall be terminated (the "Forfeited Territory") and all rights therein for such State shall revert back to Metz.

There is no dispute that Sycamore commenced product distribution in Arizona and Nevada. And both parties agree that he was not regularly distributing on January 1, 2010.[2] Accordingly, we must decide whether the contract provides for forfeiture under these circumstances.

Because Sycamore could not "regularly distribute products under the Sycamore Trademarks" unless he previously "commence[d]" doing so, we cannot construe the contract without reading one of the conditions out of the contract. If, as Sycamore contends, he needed only to commence distribution to avoid forfeiture, then the regular distribution requirement becomes a nullity. But if the contract requires that Sycamore be regularly distributing products as of January 1, 2010, the requirement that he have "commenced" doing so is simply extra verbiage.

---

[2] The parties dispute when Sycamore ceased distribution, but the date is irrelevant to our construction of the contract because it is clear that one condition was met and one was not. Sycamore acknowledges that he never commenced distribution in Southern California and does not challenge the district court's ruling that he forfeited that territory.

-6-

Relying on the contract's use of the word "and," the district court held and EarthGrains argues that both conditions must be met for Sycamore to avoid forfeiture. The word "and" is, of course, a coordinating conjunction. See Bruesewitz v. Wyeth LLC, 131 S. Ct. 1068, 1078 (2011). But the matter is not as simple as EarthGrains would have it. The phrase "in the event that" means "if." See Webster's Third New International Dictionary 1124 (1993) ("if" defined as "in the event that"); see also VII Oxford English Dictionary 633-34 (2d ed. 1989). The two clauses connected by the word "and" are both preceded by a negative ("have not commenced and do not regularly distribute"). According to De Morgan's laws, "not A and not B" is equivalent to "not (A or B)." See Peter Smith, An Introduction to Formal Logic 61, 100 (2003); see also R.L. Goodstein, Boolean Algebra 6-7 (2012). We thus conclude that the most appropriate reading of the contract requires forfeiture only if Sycamore had not commenced and did not regularly distribute products as of January 1, 2010. By meeting one condition—commencing distribution—Sycamore avoids forfeiture. We are mindful that coordinating conjunctions such as "and" generally "link[] independent ideas." Bruesewitz, 131 S. Ct. at 1078. That is not true in this case, because, as discussed above, the two conditions are not independent.

Having determined that the best reading of the contract supports Sycamore's position, we are confident that Sycamore must prevail under Arizona law's presumption against forfeiture. The most favorable thing that can be said (from EarthGrains' perspective) about this poorly drafted section of the TLA is that it is "capable of two constructions." Harford, 299 P.2d at 637. The existence of such ambiguity mandates a

-7-

finding in favor of Sycamore.  See id.  We therefore reverse the district court's holding

that Sycamore forfeited his license in Arizona and Nevada.

**B**

Sycamore claims that the district court erred by allowing EarthGrains to pursue

damages against him for sales made by Holsum, particularly without a finding of liability

against Holsum.  He also argues that EarthGrains should not be allowed to recover

damages for lost profits based on Holsum's sales.  Limitations on remedies in the TLA,

Sycamore argues, confirm that conclusion.

These challenges are waived.  Sycamore stipulated below to jury instructions

stating that, upon a determination of intentional infringement, "EarthGrains is entitled to

any profits earned by [Sycamore or SFB] or Holsum Bakery that are attributable to the

infringement" or "unfair competition."[3]  In the present matter, Sycamore's motion for

summary adjudication in the district court is insufficient to preserve the issue.  See Abuan

v. Level 3 Commc'ns, Inc., 353 F.3d 1158, 1173 (10th Cir. 2003) (reiterating that

"futility exception" is a "rarely applied narrow exception" to Fed. R. Civ. P. 51

(quotations omitted)); cf. Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1250 (10th Cir. 1992)

("[E]ven if summary judgment was erroneously denied, the proper redress would not be

through appeal of that denial but through subsequent motions for judgment as a matter of

law . . . and appellate review of those motions if they were denied.").  We are particularly

---

[3] Sycamore appeared to briefly challenge the jury instructions at oral argument, but he did not do so in his briefs.  "Issues raised for the first time at oral argument are considered waived."  Fed. Ins. Co. v. Tri-State Ins. Co., 157 F.3d 800, 805 (10th Cir. 1998).  Even if the issue were not waived below, we would likely deem it waived on appeal.

bound to apply the waiver rule in the case at bar, because by stipulating to the instructions to which he now objects, Sycamore affirmatively assented to their being read to the jury. "As a general rule, a stipulation is a judicial admission binding on the parties making it, absent special considerations." Vallejos v. C. E. Glass Co., 583 F.2d 507, 510 (10th Cir. 1978); cf. United States v. Koleski, 33 F. App'x 471, 472 (10th Cir. 2002) (unpublished) ("A defendant's stipulation waives any challenge contrary to the stipulation.").

Sycamore also contends, without citation to the record or any legal authority, that EarthGrains "is precluded from recovering for lost profits based on sales made by Holsum." He concedes, however, that "[w]hile the instructions state that EarthGrains can recover Defendants' or Holsum's profits from infringing sales if the conduct was intentional, they make no mention of allowing any recovery for EarthGrains['] theoretical lost profits for sales in AZ or NV." As Sycamore notes in his brief, "[a] central assumption of our jurisprudence is that juries follow the instructions they receive." United States v. Castillo, 140 F.3d 874, 884 (10th Cir. 1998). We further remind Sycamore that his argument is required to contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). "[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." Sunshine Haven Nursing Operations, LLC v. U.S. Dep't of Health & Human Servs., Ctrs. for Medicare & Medicaid Servs., 742 F.3d 1239, 1256 (10th Cir. 2014) (quotation omitted).

## C

Under the Lanham Act, a district court may enter judgment of up to three times the actual damages award. 15 U.S.C. § 1117(a). Following a request by EarthGrains, the district court exercised this discretion and doubled the damages awarded against Sycamore. Sycamore challenges that decision, which we review for abuse of discretion. United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1236 (10th Cir. 2000). Under this deferential standard, we will reverse the lower court's decision only if we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." FDIC v. Rocket Oil Co., 865 F.2d 1158, 1160 n.1 (10th Cir. 1989). "An abuse of discretion will be found only where the trial court makes an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Nalder v. W. Park Hosp., 254 F.3d 1168, 1174 (10th Cir. 2001) (quotation omitted).

In electing to double the damages against Sycamore, the district court discussed several "categories of damages which make an award of enhanced damages appropriate." It cited EarthGrains' introduction of "stipulated records demonstrating Holsum's $4.9 million in revenue" and noted that "there was no evidence introduced as to Holsum's costs," which the Lanham Act requires Sycamore to demonstrate, see § 1117(a). Moreover, the court noted that EarthGrains had shown "uncompensated losses for additional sales beyond those made by Holsum in Arizona and Nevada," "damage to the goodwill of the Grandma Sycamore's trademarks," and "losses of sales in Utah, which totaled at least $480,000." Noting that the jury had awarded less than half of the amount

EarthGrains proved regarding Holsum's sales alone, the district court doubled the award against Sycamore.

On our independent review of the record, we cannot say that the district court made "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Nalder, 254 F.3d at 1174. As noted above, Sycamore's stipulation to the jury instructions waived any argument he may have had that Holsum's profits were an inappropriate basis for awarding damages. It seems self-evident that, even lacking precise numbers, a company that makes and sells bread would incur costs for each loaf sold, and that profits must therefore be less than revenue. As Sycamore notes, EarthGrains submitted expert testimony that the jury could have used to estimate the profit Holsum made in arriving at its award. But it is not our place to second-guess Congress' determination that the defendant should bear the burden of proving that difference. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). We are not convinced that the district court abused its discretion in electing to double the award against Sycamore based on the evidence presented at trial about the amount of Holsum's sales. And because the district court had sufficient basis to double the award on those grounds alone, we do not need to address EarthGrains' alternate arguments for affirming that decision.

## III

The judgment of the district court is **AFFIRMED** in part and **REVERSED** in part.  We **REMAND** for further proceedings consistent with this order and judgment.

Entered for the Court


Carlos F. Lucero
Circuit Judge