**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 10, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EARTHGRAINS BAKING
COMPANIES, INC.,

      Plaintiff - Appellee

v.

LELAND SYCAMORE,

      Defendant - Appellant,

and

SYCAMORE FAMILY BAKERY, INC.,

      Defendant.

No. 15-4145
(D.C. No. 2:09-CV-00523-DAK)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **SEYMOUR**, and **MORITZ**, Circuit Judges.

---

Appellant Leland Sycamore appeals from the district court's amended order and

judgment terminating his trademark license rights under a Trademark License Agreement

("TLA") and permanently enjoining him from using the licensed mark. Exercising

jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the district court's amended

---

[*]     This order and judgment is not binding precedent except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

judgment in favor of EarthGrains.

## I

This is the second time this dispute is before us. *See EarthGrains Baking Cos. v. Sycamore Family Bakery, Inc. (Sycamore I)*, 573 F. App'x 676 (10th Cir. 2014) (unpublished). Therefore, we limit our description of the factual and procedural background to only those matters relevant to the instant appeal.

### A

In 1979, Mr. Sycamore developed a commercial brand of bread known as "Grandma Sycamore's Home Maid Bread" at his business in Salt Lake City called Aaron Bakery, Inc. In 1992, Mr. Sycamore obtained federal trademark registrations for the mark "Grandma Sycamore's Home Maid Bread" and the mark "Grandma Sycamore's Home Maid Bread Design" for use with bread, rolls, and bakery products. In 1998, Mr. Sycamore and the Metz Baking Company ("Metz") executed an Asset Purchase Agreement ("Purchase Agreement") in which Mr. Sycamore sold the marks and Aaron Bakery's other assets to Metz. The Sara Lee Corporation eventually acquired Metz's interest in the Aaron Bakery's assets, including the Sycamore marks. During the litigation from which this appeal arises, EarthGrains Baking Companies, Inc. ("EarthGrains") acquired Sara Lee's interest in the Sycamore marks and Sara Lee's other rights and interests in the Aaron Bakery's assets. *See Sycamore I*, 573 F. App'x at 678.

The Purchase Agreement conveyed from Aaron Bakery and Mr. Sycamore to Metz, without limitation, "[a]ll registered, unregistered and common law trademarks,

2

service marks, logos, trade names, trade dress and other trademark rights, including without limitation all Grandma Sycamore's trademarks," "all registered and unregistered copyrights," "[a]ll goodwill of the [bakery business]," and "[a]ll of [Aaron Bakery's] right, title and interest in and to all assignable licenses, license applications, approvals and permits of the [bakery business]." Aplt.'s App., Vol. II, pt. 1, at 112 (Asset Purchase Agreement, dated Nov. 21, 1998). The Purchase Agreement also contained a cross-reference to a TLA that Metz and Mr. Sycamore entered into at the time of the sale.

The TLA granted Mr. Sycamore a "perpetual, royalty free, exclusive license" to use the Sycamore marks in Arizona, Nevada, and Southern California, with certain cities within those states expressly excluded, as listed in an attachment to the TLA. Aplt.'s App., Vol. I, pt. 1, at 263. Under the TLA, Mr. Sycamore was not permitted to "assign, license, sublicense, or otherwise convey all or any part of [his] rights . . . without the prior written consent of Metz." *Id*. The TLA also contained a "Nonuse Forfeiture" clause,[1] as

---

[1]     This clause provided the following:

**Nonuse Forfeiture**. In the event that, as of January 1, 2010, Sycamore and/or his permitted assigns have not commenced and do not regularly distribute products under the Sycamore Trademarks within any State within the Licensed Territory, then the License granted by Metz for any State within the Licensed Territory in which such products are not then distributed by Sycamore and/or his permitted assigns shall be terminated (the "Forfeited Territory") and all rights therein for such State shall revert back to Metz. Thereafter Sycamore shall have no right to utilize the Sycamore Trademarks in such Forfeited Territory; provided, however, that Metz shall not grant a license to any other person for such Forfeited Territory without first offering to license the Forfeited Territory to Sycamore on terms at least as favorable as the

3

well as a separate section designating remedies.

**B**

Following the execution of the Purchase Agreement and the TLA, two events occurred that gave rise to the underlying litigation. *First*, without obtaining permission, Mr. Sycamore entered into an agreement with Holsum Bakery in March 2005 to "sublicense" his right to use the marks in the three states designated under the TLA. Aplt.'s App., Vol. I, pt. 2, at 101 (Agreement, Mar. 15, 2005). Sara Lee did not grant Mr. Sycamore permission under the TLA's terms to enter into such a sublicensing agreement. Holsum nevertheless exercised its purported rights under the sublicensing agreement and sold bread using the Sycamore marks in Nevada, Arizona, and the region designated as "Southern California" under the TLA. *Id.* By mid-October 2009, Mr. Sycamore terminated the sublicensing agreement with Holsum based on his legal counsel's advice. By January 2010, Holsum had ceased selling bread using the Sycamore marks in Nevada, Arizona, and California.

*Second*, in December 2008, Mr. Sycamore purchased the Coeur d'Alene French Baking Company in Salt Lake City and renamed it "Sycamore Family Bakery." Aplt.'s App., Vol. II, pt. 2, at 62. Over the ensuing five months, Sara Lee—Metz's successor-in-interest and EarthGrains's predecessor-in-interest—sent Mr. Sycamore

---

terms offered to the proposed licensee for such Forfeited Territory.

Aplt.'s App., Vol. I, pt. 1, at 264.

4

several letters demanding that he refrain from using the "Sycamore" name, except as expressly permitted by license from Sara Lee. Rather than refraining from use of the "Sycamore" name, in May 2009, Mr. Sycamore registered the trademark, "Sycamore Family Bakery & Design," with the State of Utah and registered the domain names, "sycamorefamilybakery.com" and "grandmasycamoreshomemaidbread.com." *Id*. Meanwhile, Sara Lee had been marketing and selling its own Sycamore brand of bread in Utah. After registering the "Sycamore Family Bakery" trademark, Mr. Sycamore began selling bread in Utah under the same name and with similar packaging as Sara Lee's brand, even though Utah was not one of the states in which he was licensed under the TLA to use the Sycamore trademark. *Id*.

## C

Sara Lee sued Mr. Sycamore for, *inter alia*, trademark infringement, unfair competition, cybersquatting, and breach of contract. EarthGrains eventually took Sara Lee's place in the lawsuit. The district court ultimately granted summary judgment in favor of EarthGrains, finding that Mr. Sycamore committed: (1) trademark infringement in violation of 15 U.S.C. § 1114; (2) unfair competition in violation of 15 U.S.C. § 1125(a); and (3) common law trademark infringement and unfair competition. The court also found that Mr. Sycamore had forfeited his licensed right to use the Sycamore marks pursuant to the Nonuse Forfeiture Clause of the TLA. In the same summary judgment order, the district court permanently enjoined Mr. Sycamore from using the Sycamore marks—including in the licensed territories of Arizona, Nevada, and Southern

5

California—in order to protect EarthGrains "against any potential future infringement" and "prevent[] consumers from being misled or confused." Aplt.'s App., Vol. II, pt. 2, at 70; Aplt.'s Supp. App. at 136.

A jury trial was held regarding only the question of damages. The jury found that both Mr. Sycamore and Sycamore Family Bakery "intentionally infringed the Grandma Sycamore trademarks, knowing it was infringement," and awarded damages based on the entirety of the unlawful conduct, which the district court doubled against Mr. Sycamore and tripled against Sycamore Family Bakery under the authority of the Lanham Act. *See Sycamore I*, 573 F. App'x at 679 (citing 15 U.S.C. § 1117(a)). Mr. Sycamore alone appealed the damages award and the district court's interpretation of the Nonuse Forfeiture Clause, and a panel of this court reversed and remanded only as to "the district court's holding that Sycamore forfeited his license in Arizona and Nevada." *Id.* at 681.

On remand, Mr. Sycamore offered a proposed amended judgment to reflect our mandate. The proposed judgment provided that (1) Mr. Sycamore had forfeited his rights only in Southern California; (2) Mr. Sycamore had trademark rights in Arizona and Nevada under the TLA; and (3) the injunction allowed for his use of the Sycamore marks in Nevada and Arizona consistent with his TLA rights. EarthGrains agreed that, consistent with our mandate, Mr. Sycamore had forfeited his rights under the TLA only in California. However, EarthGrains objected to Mr. Sycamore's other proposed changes.

The district court revised the judgment to indicate that Mr. Sycamore had forfeited his rights only in California but did not alter the scope of the injunction. Specifically, the

6

district court found that the nationwide injunction was independently supported by (1) Mr. Sycamore's violations of the Lanham Act and common law trademark infringement and unfair competition, and (2) Mr. Sycamore's material breaches of the TLA. The district court also refused to amend the judgment to affirmatively provide that Mr. Sycamore maintained his licensed rights to use the mark in Nevada and Arizona. The court found that, in spite of our holding that Mr. Sycamore had not lost his license rights by operation of the Nonuse Forfeiture Clause, his material breaches of the TLA *and* his Lanham Act violations constituted alternative, independent grounds for upholding the court's termination of his license rights under the TLA. Mr. Sycamore now challenges the termination of his rights under the TLA and the scope of the permanent injunction.

## II

On appeal, Mr. Sycamore focuses almost exclusively on the district court's finding on remand that his material breaches of the TLA supported the equitable relief granted to EarthGrains—i.e., the termination of his rights under the TLA and the permanent nationwide injunction. In short, he argues that he retains the full extent of his rights under the TLA to use the Sycamore mark in Arizona and Nevada, and that the nationwide injunction cannot be upheld in light of those rights.

Here we offer an overview of our analysis and, more specifically, our response to Mr. Sycamore's arguments. In brief, Mr. Sycamore's arguments rest on fundamentally flawed bases: that the district court's original order and judgment predicated its grant of equitable relief *solely* on the finding that Mr. Sycamore forfeited his rights pursuant to the

7

TLA's Nonuse Forfeiture Clause, and that the district court's amended order and judgment based that same equitable relief *solely* on its finding that Mr. Sycamore materially breached the TLA. Mr. Sycamore is incorrect on both fronts. In fact, the court's nationwide injunction was always premised primarily on Mr. Sycamore's intentional acts of infringement and unfair competition in violation of the Lanham Act and common law. And on remand, the district court clarified that the full scope of its equitable relief (both the injunction and the termination of his license rights) was justified by both Mr. Sycamore's Lanham Act violations and his material breaches of the TLA. In other words, Mr. Sycamore's Lanham Act violations provide an *independent* basis for the entirety of the equitable relief granted by the district court.

Mr. Sycamore has never challenged his liability under the Lanham Act. Nor has he argued that the injunction and termination of his license rights were improper remedies for his Lanham Act violations. Rather, in this, his second appeal, he merely contends that the equitable relief granted by the district court was an improper remedy for *his material breaches of the TLA*. Specifically, he argues that his license rights may not be terminated based on his material breaches, because the Nonuse Forfeiture Clause provides the sole means for terminating his rights under the TLA. With regard to the injunction, his argument is twofold and premised on his erroneous belief that the validity of the injunction depends on the termination of his rights under the TLA. First, he suggests that the basis for the injunction (i.e., ostensibly, the termination of his rights) no longer exists because he in fact retains the right to use the mark in Arizona and Nevada. Second, he

8

argues that even if the injunction is based on his Lanham Act violations—and therefore legally valid—it is inconsistent with his purported continuing right to use the mark in Arizona and Nevada.

As an initial matter, Mr. Sycamore waived any challenge to the propriety or scope of the permanent injunction by not raising this issue in his first appeal when he could have done so. Furthermore, Mr. Sycamore's current challenge to the injunction is premised on his contention that the TLA remains in full force and effect, and therefore he retains a licensed right to use the mark in Arizona and Nevada. But Mr. Sycamore challenges only one of the two grounds on which the district court terminated the TLA—his material breaches of the TLA. Mr. Sycamore's Lanham Act violations provided an alternative, independent basis for terminating the TLA. His failure to challenge his liability under the Lanham Act (and the equitable relief awarded based on that liability determination) is therefore fatal to his current appeal. Finally, even assuming *arguendo* that on remand the district court did not premise its termination of the TLA on Mr. Sycamore's Lanham Act violations, his argument still fails. The injunction effectively terminated Mr. Sycamore's license rights by prohibiting any use of those rights. The district court did not abuse its discretion in granting this relief, which achieves one of the key objectives of the Lanham Act by protecting the public from being misled.

## III

Before turning to the merits of the parties' positions, we must first address

9

EarthGrains's motion to dismiss the appeal as frivolous. EarthGrains contends that Mr. Sycamore's appeal is frivolous because "every issue in this appeal was waived in [*Sycamore I*]." Mot. to Dismiss at 14. "An appeal is frivolous when 'the result is obvious, or the appellant's arguments of error are wholly without merit.'" *Olson v. Coleman*, 997 F.2d 726, 728 (10th Cir. 1993) (quoting *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987)). An appeal also may be frivolous "if it consists of 'irrelevant and illogical arguments based on factual misrepresentations and false premises.'" *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1031 n.14 (10th Cir. 2002) (quoting *Romala Corp. v. United States*, 927 F.2d 1219, 1222 (Fed. Cir. 1991)). Although Mr. Sycamore failed to raise issues that he could have presented in his first appeal, and has waived other arguments in his second appeal, the current appeal is not frivolous.

Specifically, EarthGrains argues that neither the scope nor the basis for the permanent injunction has materially changed since the district court's original order. Therefore, it reasons, Mr. Sycamore could have challenged the injunction in his first appeal. EarthGrains is correct insofar as it argues that the district court clearly relied primarily on Mr. Sycamore's Lanham Act violations to justify the permanent injunction in its original order and judgment and also its amended one before us now. Therefore, the basis for Mr. Sycamore to challenge the injunction existed at the time of the first appeal. However, Mr. Sycamore's current argument is focused on more than the injunction. In the current appeal, he focuses almost exclusively on the district court's finding on remand

10

that Mr. Sycamore's material breaches of the TLA provided a basis for the court to terminate that agreement.

But EarthGrains contends that this issue too was ripe for review at the time of the first appeal. It argues that Mr. Sycamore "had the opportunity to challenge the *finding* of material breach in his original appeal but did not," and therefore, has waived our consideration of the district court's interpretation of the TLA. Aplee.'s Br. at 29 (emphasis added). EarthGrains is correct that Mr. Sycamore has waived any challenge to the district court's *finding* of material breach; however, it misconstrues his current argument. Mr. Sycamore is not challenging the district court's *finding* of material breach. Indeed, he concedes that he materially breached the TLA. Rather, Mr. Sycamore is challenging the *consequences* of that finding—namely, the termination of the TLA—consequences that EarthGrains acknowledges were previously premised on Mr. Sycamore's purported triggering of the TLA's Nonuse Forfeiture Clause.

Following our remand, the district court issued an amended order and judgment in which it expressly stated that it was relying on *new* grounds to terminate Mr. Sycamore's contractual license rights—*viz.*, decisional grounds that would not have been available for Mr. Sycamore to challenge at the time of the first appeal. The court acknowledged that it had not previously considered what impact, if any, Mr. Sycamore's material breaches and Lanham Act violations had on his rights under the TLA because it was not necessary to

11

do so in light of its interpretation of the TLA's Nonuse Forfeiture Clause.[2]  However, our

holding in *Sycamore I*—which rejected the court's reliance on that clause—made such an

analysis necessary, and the district court subsequently found that Mr. Sycamore's

material breaches *and his Lanham Act violations* provided alternative, independent bases

for terminating his contractual license rights.  It is the material-breach basis for the

court's equitable relief—notably, its termination of his contractual rights—that forms the

foundation of Mr. Sycamore's current appeal, and this basis is undoubtedly new and was

unavailable for challenge at the time of the first appeal.  The fact that Mr. Sycamore fails

to realize the import of the district court's specification of *two* alternative and

independent grounds for equitable relief—that is, in addition to Mr. Sycamore's material

breaches, his Lanham Act violations—is ultimately fatal to his current appeal, as

discussed *infra*, but it is not alone sufficient to make the instant appeal frivolous under

our governing standard.  Therefore, we deny EarthGrains's motion to dismiss the appeal.

---

[2]     In its amended order the district court stated:

> This court did not previously rule on whether Sycamore's previously
> adjudicated material breaches of the TLA and his intentional damaging
> of the Grandma Sycamore's marks in Arizona and Nevada were
> grounds for losing his trademark rights because it was not necessary to
> do so given the court's interpretation of the TLA's forfeiture provision.

Aplt.'s Supp. App. at 134.  Indeed, even EarthGrains conceded in the district court and at
oral argument before us, that Mr. Sycamore could not have raised this issue in his first
appeal.  *See id.* at 70 (Plaintiff EarthGrains's Position On Further Proceedings Pursuant
To The Court's August 29 Order, filed Sept. 18, 2014) ("This Court did not previously
rule expressly on these various grounds upon which Sycamore lost his trademark rights in
Arizona and Nevada because it was not necessary to do so.").

## IV

We next turn to the merits of the current appeal. We initially offer a bird's-eye view. Mr. Sycamore insists that in the district court's original order and judgment, the permanent, nationwide injunction was premised *solely* on the court's finding that Mr. Sycamore violated the Nonuse Forfeiture Clause of the TLA. He further insists that, after our remand, the district court's injunction was premised *solely* on the district court's finding that he materially breached the TLA. According to Mr. Sycamore, the original ground for the injunction (i.e., violation of the Nonuse Forfeiture Clause) was invalidated by our holding in *Sycamore I* and the amended ground (i.e., his material breaches of the TLA) is improper because it rests on the district court's incorrect interpretation of the remedies available to EarthGrains under the TLA. Mr. Sycamore, however, misconstrues both orders issued by the district court. The permanent, nationwide injunction is and always has been primarily premised on Mr. Sycamore's Lanham Act violations. And because Mr. Sycamore failed to challenge in his first appeal his liability under the Lanham Act—or the propriety of the injunction flowing from that finding of liability—he has waived appellate review of the injunction.

Specifically, in its amended order and judgment, following our remand in *Sycamore I*, the district court reaffirmed that the injunction is premised in part on Mr. Sycamore's Lanham Act violations. Moreover, in that same order the court found that Mr. Sycamore's Lanham Act violations also provided an independent ground—in addition to his material breaches—for terminating his rights under the TLA. And because

13

Mr. Sycamore fails to challenge this alternative, independent ground for the termination of his contract rights in his current appeal, he is left with no ground to stand on. In other words, the district court held that the equitable relief granted to EarthGrains—both the injunction and the termination of the TLA—was premised on (and fully supported by) Mr. Sycamore's Lanham Act violations: a finding that Mr. Sycamore has failed to challenge before us not once, but twice. Therefore, we need not address his arguments regarding the district court's interpretation of the TLA, because even if we agreed with Mr. Sycamore, we would still affirm the equitable relief that the district court provided because it was based primarily on Mr. Sycamore's undisputed Lanham Act violations.

## A

Mr. Sycamore's arguments begin and end with his misinterpretation of the district court's orders—specifically, the basis for the equitable relief the court granted to EarthGrains. We construe court orders "like other written instruments, except that the determining factor is not the intent of the parties, but that of the issuing court." *United States v. Spallone*, 399 F.3d 415, 424 (2d Cir. 2005). To the extent "there is any ambiguity or obscurity or if the judgment fails to express the rulings in the case with clarity or accuracy," we may look to "the entire record" to determine what was decided. *Sec. Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1066 (10th Cir. 1980); *see also Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) ("Where a judgment or order is ambiguous, 'a court "must construe its meaning, and in so doing may resort to the record upon which the judgment was based." '" (quoting *Colonial*

14

*Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 940 (4th Cir. 1997))). In particular, and as relevant here, "a court decree or judgment 'is to be construed with reference to the issues it was meant to decide.'" *Spallone*, 399 F.3d at 424 (quoting *Mayor & Aldermen of City of Vicksburg v. Henson*, 231 U.S. 259, 269 (1913)). In other words, any ambiguity in the order may be resolved by reference to the relief sought by the parties. *Cf. id.* at 424 ("[A] court is presumed not to intend to grant relief which was not demanded." (quoting *Harrigan v. Mason & Winograd, Inc.*, 397 A.2d 514, 516 (R.I. 1979))).

## i

Mr. Sycamore's interpretation of the district court's orders is simply not supported by the record. Turning first to the district court's original order, we conclude that it unambiguously imposed the permanent injunction at least primarily as a remedy for Mr. Sycamore's intentional infringement and unfair competition in violation of the Lanham Act and common law. The district court's original order divided EarthGrains's claims into two sections: (1) "Trademark Infringement and Unfair Competition Claims," and (2) "Trademark Licensing Agreement Claims." The court addressed the injunction *exclusively* in the section of its order dealing with EarthGrains's trademark infringement and unfair competition claims. Immediately after concluding that EarthGrains "[wa]s entitled to summary judgment on its Lanham Act and common law trademark infringement and unfair competition claims," the court stated that "[EarthGrains] also asks for the entry of a permanent injunction against Defendants' future *infringement*."

15

Aplt.'s App., Vol. II, pt. 2, at 619–20 (emphasis added). At the end of this first section, the court summarized its findings as follows: "The court concludes that Sara Lee is entitled to summary judgment on its Lanham Act and common law trademark infringement and unfair competition claims. Sara Lee is also entitled to the entry of a permanent injunction protecting it against any potential future infringement." *Id.* at 621. Thus, contrary to Mr. Sycamore's contention, the district court plainly concluded that EarthGrains was entitled to a permanent injunction at least primarily based on Mr. Sycamore's misconduct in violation of the Lanham Act.[3]

Although the order itself is unambiguous, the larger record only adds further support to our interpretation. Specifically, the parties' arguments regarding the relief sought by EarthGrains bolster our conclusion. *See, e.g.*, *Henson*, 231 U.S. at 269 (noting that a court order "is to be construed with reference to the issues it was meant to decide"). In its motion for partial summary judgment, EarthGrains expressly sought entry of a permanent injunction to prohibit Mr. Sycamore's "future *infringement* . . . or the use of any *confusing similar marks*" (i.e., conduct that would constitute additional violations of the Lanham Act). Aplt.'s App., Vol. I, pt. 1, at 192 (emphases added). EarthGrains did *not* argue that it was entitled to injunctive relief based on Mr. Sycamore's purported violation of the Nonuse Forfeiture Clause in the TLA. Tellingly, in his response to EarthGrains's motion, Mr. Sycamore too framed the propriety of the injunction as an

---

[3] Notably, the second section of the district court's order—addressing EarthGrains's contract claims—makes absolutely no mention of the injunction.

16

issue of trademark law. He argued that the permanent injunction was unnecessary because "there [wa]s no remaining threat that [he] w[ould] recommence the *prohibited conduct*."[4] Dist. Ct. Docket No. 80 at 13–14 (Opposition to Sara Lee's Partial Motion for Summary Judgment, filed June 24, 2010) (emphasis added). The Nonuse Forfeiture Clause does not prohibit any conduct; rather, it affirmatively demands that Mr. Sycamore *engage in certain conduct*. He also suggested in his briefing that the relief was unnecessary because he had "no intention of using the [mark]" in the future. *Id.* And although he argued that the scope of the injunction should be narrowed so as not to prohibit the use of the generic term "granny bread," he never argued, as he does now, that the scope of the injunction was incompatible with his purported continuing right to use the mark in Arizona and Nevada.

In light of the record, it is pellucid that in its original order and judgment the district court imposed the permanent, nationwide injunction based at least primarily on its finding that Mr. Sycamore's misconduct constituted a violation of the Lanham Act and common law trademark infringement and unfair competition.[5] And this was an

---

[4] Although Mr. Sycamore listed this filing in the table of contents for his appellate appendix, it was not included in the appendix. However, we have directly accessed this document from the district court's file. *See* Fed. R. App. P. 10(a) (noting that "the record on appeal" includes "the original papers and exhibits filed in the district court").

[5] The terms of the injunction further bear out this conclusion. *First*, the injunction applies nationwide, which would be unnecessary were it based solely on Mr. Sycamore's forfeiture of rights in Arizona, Nevada, and Southern California as Mr. Sycamore argues. *Second*, the injunction prevents future conduct that could mislead

(continued...)

17

independent and sufficient basis for the injunction.  *See, e.g.*, 15 U.S.C. § 1116(a)

(authorizing courts "to grant injunctions, according to the principles of equity and upon

such terms as the court may deem reasonable").

In spite of the clarity of the district court's original order, Mr. Sycamore insists

that the injunction was initially based on the district court's finding that he lost his license

rights in Arizona and Nevada pursuant to the Nonuse Forfeiture Clause—a rationale that

we rejected in *Sycamore I*.  In support of this contention he relies exclusively on one brief

passage in the district court's *amended* order.  In that order the court remarked that

> *[t]he permanent injunction in Arizona and Nevada was premised on Sycamore's forfeiture*.  However, the court made findings in its previous summary judgment order that Sycamore had materially breached the TLA as well.  Therefore, the permanent injunction may now be premised on Sycamore's loss of rights under the TLA based on those material breaches.

Aplt.'s Supp. App. at 135 (emphasis added).  Taken out of context this offhand comment

may seem to support Mr. Sycamore's interpretation; however, the court's amended order

in fact reaffirmed that Mr. Sycamore's Lanham Act violations at the very least provided

an independent basis—and in fact the primary basis—for the injunction, including in

Arizona and Nevada.  Indeed, in the very next paragraph the court removed any doubt

regarding the basis for the injunction, stating that

---

[5](...continued)
consumers as to the source of Mr. Sycamore's baked goods.  The Lanham Act—and not
the Nonuse Forfeiture Clause—prohibits misleading consumers regarding the source of
goods.

> [d]efendants did not challenge the injunction on appeal and *the injunction was based on a variety of misconduct, including unfair competition in Arizona and Nevada*. The Injunction upholds essential aspects of the Lanham Act, one of which is preventing consumers from being misled or confused. The Lanham Act protects consumers by ensuring that branded products come from a specific, identifiable source.

*Id.* at 136 (emphasis added). The court further held that "[e]ven if Sycamore did not forfeit his trademark rights in Arizona and Nevada under the TLA's forfeiture provision, he is still properly enjoined from using those licensed rights based on his abuse of those rights and *other Lanham Act violations* that this court recognized in its summary judgment order." *Id.* (emphasis added). And the court concluded that "Sycamore's misconduct, which was never the subject of the appeal, supports the current scope of equitable relief under both the TLA *and the Lanham Act*." *Id.* at 138 (emphasis added). In short, we are convinced that the district court imposed the injunction based at least primarily on the independent ground of Mr. Sycamore's intentional infringement and unfair competition in violation of the Lanham Act.

Mr. Sycamore waived any challenge to the propriety or scope of the permanent injunction by failing to contest this independent Lanham Act basis when he could have done so in his first appeal. We have declined to consider appellate challenges not raised in a prior appeal when they could have been raised. *See United States v. Gama-Bastidas*, 222 F.3d 779, 784 (10th Cir. 2000) ("Ordinarily, we will not review in a second direct appeal an issue that underlies a previously affirmed conviction."); *see also United States v. Webb*, 98 F.3d 585, 589 (10th Cir. 1996) ("[T]he limited scope of the . . . remand did

19

not provide the court with authority to review defendant's renewed objection to enhancement. This issue was not appealed by defendant in [the first appeal]; therefore, the district court's initial ruling on the enhancement became final." (citation omitted)). Indeed, despite arguing in his first appeal that he had not forfeited his license rights in Arizona and Nevada, Mr. Sycamore never suggested that a finding in his favor on that issue would have any impact on the injunctive relief granted by the court. Yet that is the exact argument he advances now. Mr. Sycamore's justification for not challenging the injunction in his previous appeal depends entirely on his strained interpretation of the district court's orders, which is at best simply incorrect. In short, his argument is insufficient to remedy his prior failure to challenge the injunction, which was predicated at least primarily on his uncontested Lanham Act violations. Consequently, Mr. Sycamore has waived any challenge to the propriety and scope of the injunction. We therefore uphold the district court's grant of permanent injunctive relief.

**ii**

Even if Mr. Sycamore had not waived any challenge to the injunction, his current arguments regarding its scope are meritless. These arguments are premised on his erroneous belief that he retains a valid license under the TLA to use the mark in Arizona and Nevada. He argues that the district court on remand held that his material breaches of the TLA constituted the *sole* ground for its grant of equitable relief (i.e., both the injunction and the termination of his license rights). Mr. Sycamore concedes that he materially breached the TLA, but argues that the court supplied an inappropriate remedy

20

for that misconduct. He contends that his license rights may be terminated only through the Nonuse Forfeiture Clause of the TLA, and therefore the court erred in terminating his rights based on its finding of material breach. He then takes this argument one step further and suggests that his purported loss of rights under the TLA provided the basis for the injunction. And because he insists that his license rights cannot be terminated for any reason other than a violation of the Nonuse Forfeiture Clause—which *Sycamore I* tells us did not occur—those rights remain fully viable and in effect, and therefore the basis for the injunction no longer exists.

Mr. Sycamore again misconstrues the district court's order and judgment. Just as his Lanham Act violations provide an independent basis for the injunction, so too they provide an independent basis for the termination of his license rights. In its amended judgment the district court relied on two alternative, independent grounds in terminating Mr. Sycamore's rights under the TLA: (1) his material breaches of the TLA and (2) his Lanham Act violations. Because Mr. Sycamore has challenged only one—i.e., his material breaches—of the two independent grounds for the court's equitable relief, his appeal cannot succeed even if we agree with him regarding his challenged ground.

In interpreting the district court's amended order and judgment we again look to the entire record—and in particular the parties' arguments—to inform our understanding of any ambiguities. *See, e.g.*, *Spallone*, 399 F.3d at 424; *Sec. Mut. Cas.*, 621 F.2d at 1066. On remand, the district court sought the input of both parties as to what, if any, further proceedings were necessary given our decision in *Sycamore I*. EarthGrains

21

argued that "a variety of other legal and factual grounds besides forfeiture" justified termination of Mr. Sycamore's trademark rights under the TLA. Specifically, it put forth two such grounds: (1) "Sycamore's previously adjudicated, multiple, material breaches of the TLA"; and (2) "Sycamore's intentional misconduct damaging the GRANDMA SYCAMORE'S marks in Arizona, Nevada, and elsewhere" (i.e., his Lanham Act violations). Aplt.'s Supp. App. at 70; *see also id.* at 118–19 (arguing that "the injunction . . . and judicial termination of the TLA are equitable issues" and "there is no serious question that Sycamore's misconduct, which has never been the subject of any appeal, fully supports the current scope of equitable relief under both the TLA *and the Lanham Act*" (emphasis added)); *id.* at 121 ("[N]othing in the TLA precludes this Court from ordering the TLA terminated based on Sycamore's *willful misconduct* and material breach of that agreement, issues that were not appealed by Sycamore." (emphasis added)). Indeed, Mr. Sycamore acknowledged that EarthGrains was seeking termination of the TLA "based on Sycamore's sublicensing *and infringement*." *Id*. at 103 (emphasis added); *id.* at 104 ("Earthgrains . . . asks this Court . . . to make an alternative finding that Sycamore's . . . infringement . . . terminates Sycamore's license.").

Alternatively, Earthgrains argued that the nationwide, permanent injunction based on Mr. Sycamore's Lanham Act violations "precluded [him] from claiming any rights to *use* of the GRANDMA SYCAMORE'S marks in Arizona or Nevada." *Id*. at 70 (emphasis added); *see also id.* at 82 ("Indeed, even if Sycamore were found to now have a trademark license in Arizona and Nevada under the TLA, he would still be properly

22

enjoined from using those licensed rights based upon his widespread abuse of those rights and his other Lanham Act violations.").  In other words, EarthGrains argued that the unchallenged Lanham Act violations doubly foreclosed Mr. Sycamore from exercising any rights granted to him by the TLA.  First, the Lanham Act violations provided an independent basis for terminating his license rights granted by the TLA.  Second, that same misconduct supported an injunction prohibiting Mr. Sycamore from exercising any rights granted to him by the TLA, to the extent they remained intact.  Under either rationale the result would be essentially the same: in practical effect, Mr. Sycamore had no remaining rights whatsoever in the mark.

At the outset, the district court acknowledged that EarthGrains was asking it to "consider additional grounds for Sycamore's loss of trademark rights," and specifically "whether Sycamore's previously adjudicated material breaches of the TLA *and his intentional damaging of the Grandma Sycamore's marks in Arizona and Nevada* were grounds for losing his trademark rights."  Aplt.'s Supp. App. at 134 (emphasis added).  The court further noted that nothing in our prior decision regarding the Nonuse Forfeiture Clause of the TLA required it "to ignore *other misconduct* and material breaches that might terminate Sycamore's rights under the TLA."  *Id.* at 135 (emphasis added); *see also id.* at 134 (noting that the court "did not previously rule on whether Sycamore's . . . intentional damaging of the Grandma Sycamore's marks in Arizona and Nevada w[as] grounds for losing his trademark rights because it was not necessary to do so given the court's interpretation of the TLA's forfeiture provision").

23

As the district court saw it, the "critical question" before it was "whether the equitable relief granted in connection with Sycamore's breach of contract and trademark infringement remains consistent with the limited decision by the Tenth Circuit on the issue of contractual forfeiture." *Id*. at 138. And it concluded that the "current scope of equitable relief" (i.e., the nationwide injunction and termination of the TLA) was supported "under both the TLA *and the Lanham Act*." *Id.* at 138 (emphasis added). In light of the arguments made by the parties and the district court's framing of the issues it was asked to decide, we think it apparent that the court found that Mr. Sycamore's Lanham Act violations provided an independent ground for both the nationwide injunction and the termination of Mr. Sycamore's license rights under the TLA.

As discussed *supra*, Mr. Sycamore does not contest his liability under the Lanham Act. Moreover, he does not argue that the court erred in terminating his license rights based on his intentional infringement and unfair competition in violation of the Lanham Act. Rather, he challenges this equitable relief based solely on its propriety as a remedy for his material breaches of the TLA. Where, as here, an appellant challenges only one of two alternative grounds supporting a particular decision, his "success on appeal is foreclosed" because "the unchallenged [rationale] is, by itself, a sufficient basis" for the relief granted by the district court. *Berna v. Chater*, 101 F.3d 631, 633 (10th Cir. 1996) (quoting *Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994)); *see Shook v. Bd. of Cty. Comm'rs of Cty. of El Paso*, 543 F.3d 597, 613 n.7 (10th Cir. 2008) ("[W]here a district court's disposition rests on alternative and adequate grounds, a party who, in

24

challenging that disposition, only argues that one alternative is erroneous necessarily loses because the second alternative stands as an independent and adequate basis, regardless of the correctness of the first alternative."); *accord N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 413 F. App'x 574, 578 (4th Cir. 2011) (unpublished) ("Because the exemptions provide an independent basis for the district court's order granting summary judgment to General Casualty, and because the Contractors abandoned any challenge to that determination on appeal by failing to raise it in their opening brief, we need not consider the underlying merits of their argument."); *United States v. Trujillo*, 247 F. App'x 139, 145 (10th Cir. 2007) (unpublished); *see also Atwood v. Union Carbide Corp.*, 847 F.2d 278, 280 (5th Cir. 1988) (finding that where an "issue constituted an independent ground for dismissal below, appellants were required to raise it to have any chance of prevailing [on] appeal"). Here, because Mr. Sycamore has never challenged his liability under the Lanham Act, or the termination of his license rights based on *that* finding, he cannot succeed, regardless of the merits of his arguments relating to the specific relief available to EarthGrains for his material breaches of the TLA. Thus, Mr. Sycamore's Lanham Act violations constitute a valid, independent legal basis for terminating the license rights granted to him by the TLA.

### iii

Even if our interpretation of the amended order is incorrect, and the district court did not consider Mr. Sycamore's Lanham Act violations to be an independent basis for the termination of his license rights, the result is the same given the overlapping nature of

25

the equitable relief at issue. It is beyond dispute that Mr. Sycamore has waived any challenge to the injunction, and the injunction *effectively* terminated his license rights by prohibiting any exercise of those rights. As the district court correctly found on remand, regardless of the continuing validity of the TLA, Mr. Sycamore "is still properly enjoined from using [his] licensed rights based on his . . . Lanham Act violations." Aplt.'s Supp. App. at 136.

Mr. Sycamore's narrow challenge to the injunction hinges, once again, on his erroneous belief that "the district court explicitly based its ruling that the nationwide permanent injunction will stand on the termination of Sycamore's rights under the TLA." Aplt.'s Opening Br. at 35. And, he argues, because the material breach is "not a valid basis for terminating [his] rights under the TLA," the legal basis for the injunction (i.e., the termination of Mr. Sycamore's license rights) no longer exists. *Id*. at 36. We reject this argument out of hand for the reasons discussed *supra*. Mr. Sycamore's intentional infringement and unfair competition in violation of the Lanham Act and common law—and not the termination of his license rights under the TLA—is (and always has been) a legal basis for the injunction. Thus, contrary to Mr. Sycamore's contentions, the injunction still rests on a valid legal basis that Mr. Sycamore has yet to challenge in two separate appeals.

As a fallback Mr. Sycamore briefly suggests that even if the injunction does have a valid legal basis (i.e., his Lanham Act violations), it is inconsistent with the purposes of

26

the Lanham Act to enjoin him from exercising his purported licensed trademark rights.[6]

In short, Mr. Sycamore contends that the injunction is not necessary to protect

EarthGrains's interest in its mark. More specifically, he argues that the injunction is

"broader than necessary to cure the effects of the *harm* caused." Aplt.'s Reply Br. at 11

(emphasis added) (quoting *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1542

(2d Cir. 1992)). He contends that because both he and EarthGrains have concurrent rights

to the mark, the injunction should be refashioned so as "to reach an appropriate result

protective of the interests of both parties." *Id.* (quoting *Sterling Drug, Inc. v. Bayer AG*,

14 F.3d 733, 747 (2d Cir. 1994)).

We start from the premise that district courts possess broad authority under the

Lanham Act "to grant injunctions, according to the principles of equity and upon such

terms as the court may deem reasonable," 15 U.S.C. § 1116(a), including explicit

authority to enjoin violations of § 1125 (i.e., conduct likely to cause confusion among the

public). *See John Allan Co. v. Craig Allen Co. L.L.C.*, 540 F.3d 1133, 1142 (10th Cir.

2008). This authority "survives the discontinuance of the illegal conduct." *F.T.C. v.*

---

[6] Mr. Sycamore does not adequately develop this argument until his reply brief, and therefore he has arguably waived it. *See, e.g.*, *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived."); *see also Byrd v. Workman*, 645 F.3d 1159, 1166 n.8 (10th Cir. 2011) (refusing to consider argument raised for first time in reply brief); *Utahns for Better Transp. v. United States Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002) ("[I]ssues will be deemed waived if they are not adequately briefed."). However, because EarthGrains preemptively addressed this argument in its response (meaning both parties have briefed the issue) we address it as well.

27

*Accusearch Inc.*, 570 F.3d 1187, 1201 (10th Cir. 2009) (quoting *United States v. W.T.*

*Grant Co.*, 345 U.S. 629, 633 (1953)). We review the district court's decision to issue a

permanent injunction, and the scope of that injunction, for an abuse of discretion. *See,*

*e..g.*, *John Allan Co.*, 540 F.3d at 1142; *accord Harolds Stores, Inc. v. Dillard Dep't*

*Stores, Inc.*, 82 F.3d 1533, 1555 (10th Cir. 1996). "A district court abuses its discretion

when it issues an 'arbitrary, capricious, whimsical, or manifestly unreasonable

judgment.'" *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir.

2007) (quoting *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999)).

Assuming *arguendo* that Mr. Sycamore did retain his license rights under the TLA,

*and* that the balance of the equities as between him and EarthGrains militates in favor of

his continued ability to exercise those rights (a highly dubious proposition), he still cannot

show that the injunction is overly broad or otherwise inconsistent with the purposes of the

Lanham Act.[7] In focusing solely on the harm to EarthGrains, Mr. Sycamore ignores one

of the fundamental purposes of the Lanham Act: to protect the public from being misled

about the source of the trademarked product. *See, e.g.*, *Beltronics USA, Inc. v. Midwest*

*Inventory Distribution, LLC*, 562 F.3d 1067, 1072 n.3 (10th Cir. 2009) ("The Lanham Act

---

[7]     *See* S. Rep. No. 1333, 79th Cong., 2d Sess., 3 (1946) ("The purpose underlying [the Lanham Act] is twofold. One is to protect the public so it may be confident that, in purchasing a product bearing a particular trade-mark which it favorably knows, it will get the product which it asks for and wants to get. Secondly, where the owner of a trade-mark has spent energy, time, and money in presenting to the public the product, he is protected in his investment from its misappropriation by pirates and cheats. This is the well-established rule of law protecting *both* the public and the trade-mark owner." (emphasis added)).

was designed to protect both consumers *and* trademark owners from the effects of such confusion." (emphasis added)); *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1053 (10th Cir. 2008) ("[T]he purpose of the Lanham Act [is] 'to protect the ability of consumers to distinguish among competing producers.'" (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992)); *see also Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006) (recognizing that a permanent injunction in Lanham Act cases serves "two fundamental purposes of trademark law: preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark").

Indeed, it was this very concern that motivated the district court in upholding the full extent of the injunction after our remand. *See* Aplt.'s Supp. App. at 136 (noting that "[t]he Injunction upholds essential aspects of the Lanham Act, one of which is preventing consumers from being misled or confused"). And the injunction is specifically tailored to achieve this goal. *Id.* at 147 ("Defendants are permanently enjoined from: . . . In any way suggesting to actual or prospective customers that Defendants' products derive from the same source as, or are otherwise related to, GRANDMA SYCAMORE'S HOME MAID BREAD."). Mr. Sycamore does not challenge the district court's conclusion that the injunction is necessary to protect the public from harm. Rather, he focuses exclusively on his purported rights under the TLA and EarthGrains's ability to seek damages for any future infringement by him. Given the egregious nature of Mr. Sycamore's misconduct, none of which he has challenged on the merits, we cannot say that the district court

29

abused its discretion in concluding that the permanent injunction is warranted and necessary to "prevent[] consumer confusion and deception in the marketplace and protect[] [EarthGrains's] property interest in the mark." *Lorillard Tobacco Co.*, 453 F.3d at 383.

**iv**

Based on the parties' briefing, our analysis would end here. However, at oral argument, Mr. Sycamore asserted for the first time that the TLA granted him not only the right to *use* the Sycamore mark in Arizona and Nevada but also the right to *exclude others* from doing so. Mr. Sycamore seemingly believes that the TLA granted him a property interest in the mark. Mr. Sycamore relies on this purported grant of authority under the TLA to argue that as long as his contractual license rights are not terminated he can exclude others—namely EarthGrains and any potential future licensee—from using the mark in Arizona and Nevada, notwithstanding the fact that Mr. Sycamore is enjoined from using the mark himself. In short, Mr. Sycamore asserts that there is an important distinction between enjoining his use of the mark and terminating his rights under the contract—the former prohibiting his exercise of only one aspect of the rights (i.e., use) granted to him under the TLA.

This argument, like many of the issues that Mr. Sycamore has raised, is waived. Indeed, it is waived under two distinct theories. *First*, Mr. Sycamore forfeited this argument by failing to raise it in the district court. *See, e.g.*, *United States v. Miller*, 868 F.3d 1182, 1185 (10th Cir. 2017) ("The government has forfeited this argument by failing

30

to raise it in its answer to Miller's motion or at any point during the proceedings below."); *Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 535 (10th Cir. 2016) ("Middle Man argues that its interpretation is supported by the public interest and the need to avoid an absurd result and illegality. But Middle Man forfeited these arguments by failing to present them to the district court.").

It is evident from the parties' arguments and the district court's amended order and judgment on remand that the court was not given the opportunity to address the distinction Mr. Sycamore now puts forth. In particular, EarthGrains took the position that the injunction *effectively* deprived Mr. Sycamore of any and all rights granted by the TLA.[8] And Mr. Sycamore never challenged this stance by making a distinction between his right to use the mark and his right to exclude others from doing so. Because Mr. Sycamore never put forth this distinction, the district court did not have an opportunity to consider it. Rather, it merely considered whether the equitable relief it had granted could

---

[8]    In this regard, EarthGrains argued that

> even if Sycamore were found to now have a trademark license in Arizona and Nevada under the TLA, he would still be properly enjoined from using those licensed rights based upon his widespread abuse of those rights and his other Lanham Act violations. Thus, the very most that Sycamore could hope for would be for this Court to amend the Judgment to provide that Sycamore's trademark rights remained in full force and effect until Sycamore was properly enjoined by this Court from exercising those rights . . . .

Aplt.'s Supp. App. at 82 (Plaintiff EarthGrains Baking Companies, Inc.'s Response To Defendant Sycamore's Proposed Amended Final Judgment, filed Oct. 27, 2014).

be maintained in light of our holding that Mr. Sycamore had not forfeited his rights under the contract and concluded that the relief was amply supported on other grounds.

Forfeited arguments ordinarily may be considered on appeal but only under our stringent plain-error standard of review. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) ("[W]e will entertain forfeited theories on appeal, but we will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result."). But the proponent of the forfeited contention must ask us to apply that standard and make a plain-error argument; if the proponent fails to do so, we ordinarily decline to consider the contention and deem it effectively waived. *Id*. at 1131 (noting that failure to argue for plain error on appeal "marks the end of the road" for a forfeited argument); *see Fish v. Kobach*, 840 F.3d 710, 729–30 (10th Cir. 2016) ("Nor does he make an argument for plain error review on appeal. Consequently, his plain statement argument has come to the end of the road and is effectively waived."); *see also Verlo v. Martinez*, 820 F.3d 1113, 1133 n.7 (10th Cir. 2016) ("Even if this argument had been merely forfeited, it would nevertheless be an inappropriate basis for reversal because the [appellant] has not argued plain error.").

*Second*, even if Mr. Sycamore had argued this TLA rights distinction before the district court, he waited until oral argument to present it to us on appeal (entirely omitting it from his briefing). This provides an entirely distinct basis for deeming his argument to be waived. *See, e.g.*, *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998) ("Issues raised for the first time at oral argument are considered waived."); *accord*

32

*United States v. Dahda*, 852 F.3d 1282, 1292 n.7 (10th Cir. 2017), *cert. docketed*, No. 17-43 (U.S. Jul. 7, 2017); *Lebahn v. Nat'l Farmers Union Uniform Pension Plan*, 828 F.3d 1180, 1188 n.8 (10th Cir. 2016).

It is true that application of preservation doctrines is discretionary: "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). However, the dispute between the parties has been ongoing for over eight years; indeed, even just focusing on the post-remand period, approximately three years have elapsed. And, at no point in his briefing has Mr. Sycamore raised the argument he does now. We are disinclined to exercise our discretion to revisit and study the terms of the TLA for purposes of considering this late-blooming argument after all of this time; therefore, under the circumstances of this case, we deem this argument waived.

## V

For the foregoing reasons we **DENY** EarthGrains's motion to dismiss and **AFFIRM** the district court's amended order and judgment terminating the TLA and

permanently enjoining Mr. Sycamore from using the Sycamore Mark.[9]

Entered for the Court

JEROME A. HOLMES
Circuit Judge

_____

[9]      Mr. Sycamore's motion to seal portions of the appendix (filed on February 1, 2016) is **granted**.